UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID NAIL,

       Plaintiff,                                 Hon. Janet T. Neff

v.                                               Case No. 1:12-CV-1345

BRENT MYERS, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this matter on December 11, 2012, against Brent Myers, Penny Adams, Bruce Lemmon, and Autumn Schrauben. Having granted Plaintiff's motion to proceed as a pauper, the Court has conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, or fails to state a claim upon which relief can be granted. Having conducted this initial review, the undersigned recommends that Plaintiff's claims against all Defendants be dismissed EXCEPT Plaintiff's substantive due process and procedural due process claims against Defendant Myers which be permitted to go forward.

## BACKGROUND

Before discussing the allegations in Plaintiff's complaint, a brief discussion of two Michigan criminal provisions and their intersection with the Michigan Sex Offenders Registration Act is necessary. Under Michigan law, it is unlawful for "[a]n adoptive or natural parent of a child" to "take. . .or retain that child for more than 24 hours, with the intent to detain or conceal the child from any other

parent or legal guardian of the child who has custody or parenting time rights." Mich. Comp. Laws § 750.350a. This provision is often referred to as the parental kidnapping statute. *See, e.g., People v. Harvey*, 435 N.W.2d 456 (Mich. Ct. App. 1989).

A separate provision makes it unlawful for "[a] person" to "maliciously, forcibly, or fraudulently lead, take, carry away, decoy, or entice away, any child under the age of 14 years." Mich. Comp. Laws § 750.350. This provision is generally referred to as the child kidnapping statute. *See, e.g., People v. Kuchar*, 569 N.W.2d 920 (Mich. Ct. App. 1997). The child kidnapping statute, however, does not apply to the adoptive or natural parent of the child in question. *See* Mich. Comp. Laws § 750.350 (an "adoptive or natural parent of the child shall not be charged with and convicted for a violation of this section"). For purposes of the present action, the relevant distinction between these two offenses is that persons convicted of child kidnapping are required, under Michigan law, to register as sex offenders, whereas those convicted of parental kidnapping are not required to register as sex offenders. *See* Mich. Comp. Laws §§ 28.722, 28.723.

The following allegations are contained in Plaintiff's complaint. Plaintiff was convicted in Michigan of parental kidnapping and served his sentence for such prior to the 1994 enactment of the Michigan Sex Offenders Registration Act. From 2005 through March 2010, Plaintiff was incarcerated by the Indiana Department of Corrections (IDOC). Plaintiff has not specified the nature of the conviction which precipitated his incarceration by the IDOC, other than to assert that such did not obligate him to register as a sex offender. At some point after his 2010 release from custody, Plaintiff learned that he had been erroneously placed on Indiana's sex offender registry based on his prior Michigan conviction. Attached to Plaintiff's complaint is a copy of a printout indicating that Plaintiff

is (or at one time was) identified by the State of Indiana as a sex offender based on a conviction obtained in Michigan. (Dkt. #1, Exhibit A).[1]

At some point, Plaintiff discussed this matter with Amy Hutchins, his probation officer. Hutchins investigated the matter and learned that Defendant Myers, the person responsible for managing the Indiana Sex and Violent Offender Registry, had "placed [Plaintiff] on the Indiana sexual Registry cite; which then went to the National sexual offender registry of Offendex.com." As part of her investigation, Hutchins communicated with Defendant Schrauben, a Departmental Technician with the Michigan State Police. On January 11, 2012, Schrauben authored a letter to Hutchins indicating that Plaintiff "does not have to register as a sex offender in the State of Michigan" because Plaintiff served his sentence for his Michigan conviction prior to the enactment of the Michigan Sex Offender Registration Act. (Dkt. #1, Exhibit B). In her letter, however, Schrauben mistakenly identified Plaintiff as having been convicted of child kidnapping, an offense that would subject Plaintiff to registration as a sex offender if committed after the enactment of Michigan Sex Offender Registration Act, rather than parental kidnapping, an offense which does not require registration as a sex offender.

On or about August 10, 2012, Plaintiff communicated via email with Defendant Adams, the Executive Assistant to Defendant Lemmon, the Commissioner of the Indiana Department of Corrections. Plaintiff asserted that his inclusion in the Indiana Sex and Violent Offender Registry was in error and requested that he be removed from the Registry. (Dkt. #1, Exhibit C). Adams forwarded Plaintiff's email to Defendant Myers. (Dkt. #1, Exhibit D). Myers responded to Plaintiff, informing him that a review of the Indiana Sex and Violent Offender Registry revealed no evidence that Plaintiff was

---

[1] The website link printed on the bottom of this particular exhibit directs the public to a webpage indicating that Plaintiff is registered as a sex offender in Indiana based upon a 1989 conviction in Michigan. *See* http://www.sorarchives.com/directory/IN/N/David_W_Nail_670329 (last visited on January 22, 2013).

currently registered as a sex offender. (Dkt. #1, Exhibit E). Myers asked Plaintiff to provide him with certain information so that he could look into the matter. (Dkt. #1, Exhibit E). Plaintiff responded by again contacting Defendant Adams, who instructed Plaintiff to communicate directly with Myers in an effort to resolve the matter. (Dkt. #1, Exhibit F). Plaintiff's erroneous placement on the Indiana Sex and Violent Offender Registry was never corrected.

Plaintiff alleges that Defendants violated his due process and equal protection rights under the Fourteenth Amendment and, moreover, committed defamation, slander, libel, and intentional infliction of emotional distress.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

> do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

I.      **Federal Law Claims**

As previously noted, Plaintiff alleges that Defendants' actions violated his due process and equal protection rights under the Fourteenth Amendment. For the reasons discussed below, the undersigned recommends that Plaintiff's equal protection claims be dismissed as to all Defendants and,

furthermore, that Plaintiff's due process claims be dismissed as to Defendants Adams, Lemmon, and Schrauben, but not as to Defendant Myers.

### A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011); *see also*, *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012). Plaintiff has failed to allege facts sufficient to state an equal protection claim. Specifically, Plaintiff has failed to allege that he has been treated differently from anybody who is similarly situated. Accordingly, the undersigned recommends that Plaintiff's equal protection claims be dismissed.

### B. Due Process

Plaintiff asserts a violation of his due process rights, but fails to specify whether such violations are substantive or procedural in nature. The Court has, therefore, interpreted Plaintiff's complaint as asserting both substantive and procedural due process claims.

1. Substantive Due Process

Substantive due process protects against deprivations of "a particular constitutional guarantee" as well as "claims that the government has acted in a way that 'shock[s] the conscience.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012). When the conduct in question has been undertaken by an executive branch official, such violates substantive due process "only if it can be characterized as 'arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* Only conduct "that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency" runs afoul of this standard. *Id.*

Plaintiff asserts substantive due process violations against Defendants Schrauben and Myers, both of whom are employed by the executive branch of their respective state governments. With regard to Schrauben's conduct, Plaintiff alleges that her January 11, 2012 letter to Amy Hutchins constituted gross negligence, incompetence, and dereliction of duty. While the Court understands why Schrauben's letter caused Plaintiff distress, Plaintiff has failed to allege any facts from which a reasonable person could conclude that Schrauben's mistake of fact, confusing two almost identical statutes, was anything other than an honest mistake made in good faith. The Court concludes that such conduct is neither arbitrary, in the constitutional sense, nor shocks the conscience.

The Court reaches a different conclusion, however, with respect to Plaintiff's allegations against Defendant Myers. Simply stated, Plaintiff alleges that Defendant Myers erroneously added him to the Indiana Sex and Violent Offender Registry and then intentionally failed to remove him from the Registry when the mistake was brought to his attention. While perhaps a close call, the Court finds that Plaintiff's allegations are sufficient to state a claim as a reasonable person could find that the alleged conduct is "so brutal and offensive that it does not comport with traditional ideas of fair play and

decency." Accordingly, the undersigned recommends that Plaintiff's substantive due process claim against Defendant Schrauben be dismissed, but that Plaintiff's substantive due process claim against Defendant Myers be permitted to go forward.

2. Procedural Due Process

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or certain liberty or property interests the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). The Due Process Clause is not implicated by any and every deprivation of liberty or property, but instead applies only where an individual has been deprived of a *constitutionally protected* liberty or property interest. *See Brentwood Academy*, 442 F.3d at 433. The first step, therefore, in assessing whether Plaintiff suffered a violation of his procedural due process rights is to determine whether he was deprived of a constitutionally protected liberty or property interest.

In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court observed that "reputation alone, apart from some more tangible interests such as employment, is [neither] 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701. The Court further recognized, however, that "there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." *Id.* at 710. Accordingly, as pertains to alleged injuries to reputation, the *Davis* Court articulated what has become known as the stigma-plus test. *Id.* at 708-09. Pursuant to this test, a

plaintiff alleging a procedural due process violation resulting from an injury to reputation must "show that the state's action both damaged his or her reputation (the stigma) and that it deprived [him or her] of a right previously held under state law." *Doe v. Michigan Department of State Police*, 490 F.3d 491, 501-02 (6th Cir. 2007) (quoting *Davis*, 424 U.S. at 708).

Plaintiff alleges that Defendants Myers, Adams, and Lemmon violated his procedural due process rights. Plaintiff alleges that Defendants' actions were defamatory and injured his reputation thereby impairing his ability to obtain employment. Plaintiff further alleges that he was not afforded process prior to being placed on the Indiana Sex Offender Registry in the first place. More specifically, Plaintiff alleges the following. Plaintiff alleges that Defendant Myers is responsible for managing the Indiana Sex and Violent Offender Registry. Plaintiff sent an email to Defendant Adams, the Executive Assistant to Defendant Lemmon, requesting that he be removed from the Indiana Sex and Violent Offender Registry. Adams forwarded the email to Defendant Myers for review and response. Defendant Myers responded to Plaintiff, informing him that a review of the Indiana Sex and Violent Offender Registry revealed no evidence that Plaintiff was currently registered as a sex offender. Plaintiff responded by again sending an email to Defendant Adams who subsequently instructed Plaintiff to "respond directly to" Defendant Myers "so he can assist you."

Plaintiff's allegations against Defendants Adams and Lemmon fall far short of stating a claim on which relief may be granted. Specifically, Plaintiff has failed to allege that Lemmon or Adams deprived him of a constitutionally protected liberty or property interest. Plaintiff's allegations against Defendant Myers, who is allegedly responsible for managing the Indiana Sex and Violent Offender Registry, however, are sufficient to state a claim. *See Doe*, 490 F.3d at 501-02; *see also*, *Schepers v. Commissioner, Indiana Department of Correction*, 691 F.3d 909, 914-17 (7th Cir. 2012) (erroneous

placement on Indiana sex offender registry implicates a protected liberty interest and, therefore, constitutionally sufficient process must be afforded to correct such). Accordingly, the undersigned recommends that Plaintiff's procedural due process claims against Defendants Adams and Lemmon be dismissed and Plaintiff's procedural due process claim against Defendant Myers go forward.

II.       **State Law Claims**

Plaintiff alleges that Defendants' actions constitute defamation, slander, libel, and intentional infliction of emotional distress. Defendant Schrauben appears to be a Michigan resident and Defendants Adams, Lemmon, and Myers all appear to be Indiana residents. It also appears that Plaintiff was a resident of Michigan when the events in question occurred. The allegations against Defendant Schrauben concern conduct that allegedly occurred in the state of Michigan whereas the allegations against Defendants Adams, Lemmon, and Myers concern conduct that allegedly originated in the state of Indiana. Plaintiff has failed to indicate whether he is asserting these state law claims under Indiana or Michigan law. Accordingly, Plaintiff's claims against Defendant Schrauben will be analyzed pursuant to Michigan law and Plaintiff's claims against Defendants Adams, Lemmon, and Myers will be analyzed pursuant to both Michigan and Indiana law.

A.        Defendant Schrauben

1.        Defamation, Libel, and Slander

Under Michigan law, claims for defamation, libel, and slander are subject to the same standard. *See Michigan First Credit Union v. Smith*, 2009 WL 3400964 at *3 (Mich. Ct. App., Oct. 22, 2009). The standard applicable to all such claims is as follows: (1) a false and defamatory statement

concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (injury per se) or the existence of special harm caused by publication. *Id.* (quoting *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005)). It must be recognized, however, that "public servants acting within the scope of their employment" enjoy a qualified privilege against such claims. *See Parks v. Johnson*, 269 N.W.2d 514, 516 (Mich. Ct. App. 1978); *Nicklas v. Green Green & Adams, P.C.*, 2012 WL 2126066 at *3 (Mich. Ct. App., June 12, 2012). This privilege may be overcome "only by showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth." *Nicklas*, 2012 WL 2126066 at *3.

Plaintiff has failed to allege facts sufficient to state a claim for defamation, libel, or slander. Schrauben, an employee of the Michigan State Police, wrote a letter that was clearly within the scope of her official duties, which she then sent to Plaintiff's probation officer. Plaintiff has failed to allege facts from which a reasonable person could conclude that Schrauben acted with actual malice or recklessness. As Plaintiff's allegations are insufficient to overcome Defendant Schrauben's qualified privilege, the undersigned recommends that Plaintiff's defamation, libel, and slander claims against Schrauben be dismissed.

2.   Intentional Infliction of Emotional Distress

Under Michigan law, to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege the following: (1) the defendant's conduct was "extreme and outrageous," (2) the defendant acted with "intent or recklessness," and (3) the defendant's conduct caused the plaintiff to suffer "severe emotional distress." *Lucas v. Awaad*, - - - N.W.2d - - -, 2013 WL 336005 (Mich. Ct.

App., Jan. 29, 2013). The *Lucas* court further clarified that "[l]iability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Plaintiff's allegations fall short of this standard. Schrauben's conduct, while unfortunate, simply fails to rise to the level of "extreme and outrageous." Plaintiff has not alleged that Schrauben acted with recklessness or intent to injure, but instead merely alleges that Schrauben was negligent and incompetent. Finally, Plaintiff does not allege facts to support his claim that Schrauben's actions caused him to suffer "severe" emotional distress. Instead, Plaintiff simply asserts the legal conclusion that such was the case. The undersigned recommends, therefore, that Plaintiff's claim for intentional infliction of emotional distress against Defendant Schrauben be dismissed.

### B. Defendants Adams, Lemmon, and Myers

#### 1. Defamation, Libel, and Slander

Under Indiana law, claims for defamation, libel, and slander are likewise subject to the same standard. *See Branham v. Celadon Trucking Services, Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001). To maintain any of these causes of action, Plaintiff must allege: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. The defamatory nature of the subject communication "must appear without resort to extrinsic facts or circumstances." The determination of whether a communication is defamatory is a question of law. *Id.*

Whether analyzed under Michigan law or Indiana law, Plaintiff's allegations against Defendants Adams, Lemmon, and Myers fail to state a claim. As previously noted, the communications

in question are attached to Plaintiff's complaint. (Dkt. #1, Exhibits C-F). The Court discerns nothing in these communications that could be characterized by a reasonable person as defamatory. Accordingly, the undersigned recommends that Plaintiff's claims for defamation, libel, and slander against Defendants Adams, Lemmon, and Myers be dismissed.

2.      Intentional Infliction of Emotional Distress

Under Indiana law, to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant engaged in "extreme and outrageous" conduct that intentionally or recklessly caused severe emotional distress. *See Creel v. I.C.E. & Associates, Inc.*, 771 N.E.2d 1276, 1281-82 (Ind. Ct. App. 2002). Moreover, the conduct at issue "must exceed all bounds usually tolerated by a decent society and cause mental distress of a very serious kind." *Id.* at 1282. Again, whether Plaintiff's claims are analyzed under Indiana or Michigan law, the result is the same. The Court discerns nothing in the subject communications that could be characterized by a reasonable person as "extreme and outrageous." Accordingly, the undersigned recommends that Plaintiff's claims for intentional infliction of emotional distress against Defendants Adams, Lemmon, and Myers be dismissed.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Plaintiff's claims against Defendants Adams, Lemmon, and Schrauben be dismissed for failure to state a claim upon which relief may be granted. The undersigned further recommends that Plaintiff's claims against Defendant Myers be dismissed for failure to state a claim upon which relief may be granted EXCEPT for Plaintiff's

substantive due process and procedural due process claims which be permitted to go forward as to Defendant Myers.

The undersigned further recommends that the Clerk forward Plaintiff's complaint to the U.S. Marshals Service, which is authorized to mail a request for waiver of service to Defendant Myers in the manner prescribed by Fed. R. Civ. P. 4(d)(2). If waiver of service is unsuccessful, the undersigned recommends that summons issue and be forwarded to the U.S. Marshals Service for service under 28 U.S.C. § 1915(d). The undersigned further recommends that Defendant Myers reply to the complaint by way of answer, motion to dismiss, or motion for summary judgment within the time allowed by law.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 5, 2013

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge